UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL ORR, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW LIAW, et al., <br><br> Defendants. | CAUSE NO. 3:19-CV-154-JD-MGG |

OPINION AND ORDER

Michael Orr, a prisoner without a lawyer, is proceeding in this case against seven defendants on four claims. ECF 14. "[A]gainst Warden Sevier, Dr. Liaw, and Captain Carter in their individual capacities for compensatory and punitive damages for forcing him to be handcuffed behind his back in violation of the Eighth Amendment on numerous occasions from October 21, 2017, to January 1, 2019, despite his need for special accommodations because of an injury to his left elbow[.]" *Id.* at 7. "[A]gainst Dr. Liaw and Physical Therapist Bates in their individual capacities for compensatory and punitive damages for violating the Eighth Amendment by fabricating health records to prevent him from accessing needed medical treatment and by delaying his appointments to cause him physical harm and unnecessary pain[.]" *Id.* "[A]gainst Nurse Hutchison and Nurse Lewis in their individual capacities for compensatory and punitive damages for violating the Eighth Amendment by failing to schedule timely sick call appointments and withholding [non-prescription] pain relievers on November 12, 2017; November 14, 2017; November 21, 2017; February 8, 2018; February 23, 2018;

May 15, 2018; May 28, 2018; June 5, 2018; June 12, 2018; July 16, 2018; July 16, 2018; August 10, 2018; December 31, 2018; and January 15, 2019[.]" *Id.* at 7-8. "[A]gainst Wexford of Indiana on a *Monell*[1] claim for compensatory and punitive damages for enforcing six policies (Health Care Records, HCSD-1.34; Access to Care, HCSD-2.04; Waiting List, HCSD-2.33; Medication Management, HCSD-2.17; Off-site Medical, Hospital, and Specialty Care Referrals, A1.05, and Health Evaluation of Offenders in Segregation, HCSD 2.25) which denied him needed medical treatment for his left elbow." *Id.* at 8.[2]

In December 2020, Physical Therapist Bates, Nurse Hutchison, Nurse Lewis, Dr. Liaw, and Wexford (the "Medical Defendants") filed a joint motion for summary judgment. ECF 99. Captain Carter and Warden Sevier (the "State Defendants") also filed a joint motion for summary judgment. ECF 104. With the motions, the defendants provided Orr the notice required by N.D. Ind. L.R. 56-1(f). ECF 101, 106. Attached to the notices were copies of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

On June 17, 2021, the court granted Orr until August 19, 2021, to respond to both summary judgment motions. ECF 120. On June 24, 2021, Orr filed a response to the State Defendants' summary judgment motion, and the State Defendants filed a reply.

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).
[2] Orr was also proceeding "against Warden Sevier in his official capacity for injunctive relief to receive medical treatment for chronic pain in his left elbow," but the court dismissed this claim as moot. ECF 14 at 8; ECF 117.

2

ECF 121, 122. Orr did not file a response to the Medical Defendants' summary judgment motion.[3] Therefore the court will now rule on both summary judgment motions.

### I.   Medical Defendants' Summary Judgment Motion (ECF 99)

Orr is proceeding against five Medical Defendants on four claims. Each Medical Defendant will be addressed in turn.

#### a.   *Dr. Andrew Liaw*

Orr is proceeding against Dr. Liaw on two claims. First, Orr is proceeding against Dr. Liaw on one claim "for forcing him to be handcuffed behind his back in violation of the Eighth Amendment on numerous occasions from October 21, 2017, to January 1, 2019, despite his need for special accommodations because of an injury to his left elbow[.]" ECF 14 at 7. However, Dr. Liaw attests he entered orders on October 12, 2017, and October 29, 2017, for Orr to be cuffed only in the front, and Orr provides no evidence refuting these attestations. ECF 100-2 at 2, 4, 9-10. Moreover, Orr has offered no evidence Dr. Liaw ever forced him to be handcuffed behind his back. Thus, there is no evidence by which a reasonable jury could conclude Dr. Liaw violated Orr's Eighth Amendment rights by forcing him to be handcuffed behind his back.

Second, Orr is proceeding against Dr. Liaw on one claim "for violating the Eighth Amendment by fabricating health records to prevent him from accessing needed medical treatment and by delaying his appointments to cause him physical harm and

---

[3] In his response to the State Defendants' summary judgment motion, Orr states he reached a settlement agreement with the Medical Defendants. ECF 121-2 at 3-5. However, no settlement is on file with the court and the Medical Defendants have not moved to withdraw their summary judgment motion. Therefore, both summary judgment motions will be addressed on the merits.

unnecessary pain[.]" ECF 14 at 7. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Dr. Liaw provides an affidavit (ECF 100-2)[4] and Orr's medical records (ECF 21-1, 21-2, 21-3, 21-4), which demonstrate the following: During all relevant times, Dr. Liaw was employed by Wexford as a physician at Westville Correctional Facility ("WCF"). ECF 100-2 at 1. On October 6, 2017, Orr was transferred to WCF from New Castle Correctional Facility ("New Castle"). *Id.*; ECF 21-1 at 921. Prior to Orr's arrival at WCF, Orr had been injured in an altercation at New Castle and an x-ray had been ordered of his elbow. ECF 100-2 at 1. On October 9, 2017, Dr. Liaw was notified of x-ray results showing Orr had a suspected left elbow fracture. ECF 21-1 at 913, 1166. Dr. Liaw prescribed Orr Tylenol 3 until he was able to personally review the radiologist's

---

[4] Because Orr did not respond to the Medical Defendants' summary judgment motion, the Court accepts the Medical Defendants' attestations as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .")

4

interpretation of the x-ray results. *Id.* at 913. On October 12, 2017, Dr. Liaw received the results of the radiology review confirming a left elbow fracture. *Id.* at 909-12; ECF 100-2 at 1-2. Dr. Liaw transferred Orr into the infirmary, continued his Tylenol prescription, and entered an order Orr was not to be cuffed behind his back given the existence of the fracture. ECF 100-2 at 2; ECF 21-1 at 881-83, 909-12. Based on the x-ray results, Dr. Liaw did not believe Orr required surgery and created a plan for Orr to be housed in the infirmary and provided with pain medication and a sling to immobilize the injured elbow. ECF 100-2 at 2-3; ECF 21-1 at 881-83.

On October 18, 2017, Dr. Liaw examined Orr and ordered another x-ray to assess healing of the fracture. ECF 100-2 at 3; ECF 21-1 at 796-98. Dr. Liaw also prescribed Orr with Naproxen to reduce swelling. *Id.* On October 19, 2017, Orr was seen by Meridian Radiology and the radiologist again identified a fracture but concluded the elbow appeared to be "within normal limits." ECF 100-2 at 3; ECF 21-1 at 1162-65.

On October 21, 2017, Orr had an incident with custody staff and was charged with assault with a deadly weapon for striking an officer in the face with a sharp object. ECF 100-2 at 4; ECF 21-1 at 755, 766-68. As a result of this incident, Orr was discharged from the infirmary and sent back to his original housing unit with a modified sling. *Id.* On October 29, 2017, Dr. Liaw was contacted by security staff because Orr was becoming increasingly a security threat at the facility but he had an order for front cuffing due to his elbow fracture. ECF 100-2 at 4; ECF 21-1 at 751. Dr. Liaw notified correctional staff that Orr should continue to be cuffed in the front despite the potential security threat. *Id.*

5

At some point after October 27, 2017, Dr. Liaw entered an order for Orr to begin receiving physical therapy. ECF 100-2 at 5. On January 23, 2018, Orr began physical therapy for both of his elbows. ECF 21-1 at 687-88. On January 26, 2018, Orr had a chronic care visit with Dr. Liaw. *Id.* at 679-82; ECF 100-2 at 5-6. Orr complained of "shooting pain" and "tingling" in his elbows, but Dr. Liaw did not notice any swelling, erythema, or muscle atrophy. *Id.* Dr. Liaw concluded Orr had elbow pain with no obvious sign of abnormality or nerve injury, and prescribed Orr with acetaminophen to take as needed. *Id.* On April 19, 2018, Orr attended physical therapy again. ECF 21-1 at 597. On May 4, 2018, Orr had a chronic care visit with Dr. Liaw. *Id.* at 585-88; ECF 100-2 at 6. Orr reported he was able to use his arm, but still felt there was something wrong. *Id.* Dr. Liaw determined that, because Orr was a high functioning individual, opioids would not be appropriate. *Id.* Dr. Liaw determined to have Orr continue with physical therapy and continued his prescription for Tylenol. *Id.*

On July 3, 2018, Orr attended physical therapy again. ECF 21-1 at 507-08. Physical Therapist Bates determined Orr was a "well-built, muscular individual" and was "able to move his extremities within their full" range of motion. *Id.* Orr was discharged from physical therapy and issued a home exercise plan. *Id.* On August 7, 2018, Orr saw Dr. Liaw for a chronic care visit and complained of an issue with his elbows. *Id.* at 455-58; ECF 100-2 at 7. Dr. Liaw noted Orr had good grip strength and no sign of atrophy, and again determined opioid-level medications would be counterproductive and potentially harmful. *Id.* Orr saw Dr. Liaw for another chronic care visit on November 27, 2018, and complained that his elbows were swelling up. ECF

21-1 at 210-14; ECF 100-2 at 7-8. Dr. Liaw noted Orr had been non-compliant with his treatment in the beginning, which could have long-term consequences. *Id.* Dr. Liaw ordered repeat x-rays of Orr's elbows to rule out an ongoing bony injury. *Id.* Orr was seen by Meridian Radiology on November 28, 2018, and the radiologist determined his left elbow appeared to be "within normal limits" with no evidence of any fracture. ECF 21-1 at 1162.

On March 5, 2019, Orr had a chronic care visit with Dr. Liaw and complained about elbow pain. *Id.* at 19-22; ECF 100-2 at 8. Orr expressed his belief he had nerve damage, but Dr. Liaw examined both elbows and noted no gross abnormalities or muscle atrophy. *Id.* Dr. Liaw concluded Orr's fracture had healed in good anatomical alignment, as there was no indication of any abnormality in the x-rays taken over a year after the injury. ECF 100-2 at 9. Although Orr had some lingering symptoms, Dr. Liaw did not believe Orr showed any objective symptoms of a nerve injury, such as muscle atrophy, decreased grip strength, or decreased range of motion. *Id.* If Orr had an ongoing nerve injury in his elbow, objective signs would almost certainly be present. *Id.* Dr. Liaw renewed Orr's prescriptions and referred him back to physical therapy to see if any additional exercises could be offered to help with his ongoing symptoms. ECF 21-1 at 19-22; ECF 100-2 at 8.

Here, Orr has offered no evidence by which a reasonable jury could conclude Dr. Liaw's treatment of his elbow was "plainly inappropriate." *See Hayes*, 546 F.3d at 524. Specifically, Orr's medical records show Dr. Liaw monitored the condition of Orr's fracture by ordering x-rays, prescribed him pain medication, provided him with a sling

7

to immobilize his elbow, and referred him to see a physical therapist to assist in his recovery. Orr offers no evidence refuting Dr. Liaw's attestation that Orr's fracture healed in good anatomical alignment and Orr has no ongoing nerve injury. ECF 100-2 at 9. Lastly, Orr offers no evidence refuting Dr. Liaw's attestations he never fabricated any records, and there is no evidence Dr. Liaw unnecessarily delayed any medical appointments. *See* ECF 100-2 at 10-11. Thus, because there is no evidence by which a reasonable jury could conclude Dr. Liaw violated Orr's Eighth Amendment rights, summary judgment is warranted in favor of Dr. Liaw on this claim.

    b. <u>Nurse Hutchison</u>

Orr is proceeding against Nurse Hutchison on one claim "for violating the Eighth Amendment by failing to schedule timely sick call appointments and withholding [non-prescription] pain relievers on November 12, 2017; November 14, 2017; November 21, 2017; February 8, 2018; February 23, 2018; May 15, 2018; May 28, 2018; June 5, 2018; June 12, 2018; July 16, 2018; July 16, 2018; August 10, 2018; December 31, 2018; and January 15, 2019[.]" ECF 14 at 7-8. Specifically, Orr alleged in his complaint that Nurse Hutchison should have scheduled him for more frequent physician appointments. ECF 13. Nurse Hutchison submits an affidavit, in which she attests to the following facts the Court accepts as undisputed:

> 1. Between 2017 and 2018, Nurse Hutchison regularly saw Orr for sick call visits in response to his healthcare requests. [ECF 100-3 at 2-4].
>
> 2. Nurse Hutchison conducted Orr's sick call assessments in accordance with IDOC policy and her training. [*Id.* at 4].

8

      3. As a nurse, Nurse Hutchison does not have the authority to diagnose patients or prescribe treatment. Instead, those decisions are made by a physician, nurse practitioner, or physician assistant at the facility. [*Id.*].

      4. Nurse Hutchison only schedules inmates to see a physician when she believes it is medically necessary, such as when she is not comfortable providing treatment or a chronic condition has changed in a significant way. [*Id.*].

      5. Nurse Hutchison scheduled Orr to be seen by a physician on many occasions, but there were a number of occasions when she was able to address his needs directly or through a telephone call with the physician or she determined Orr could wait to be seen at his next scheduled chronic care visit. [*Id.* at 4-5].

      6. In November 2017, Nurse Hutchison spoke with Dr. Liaw and entered a note in Orr's medical records that he had the ability to receive Tylenol if requested. [*Id.* at 3, 5].

Here, because Orr offers no evidence to dispute Nurse Hutchison's affirmations she scheduled him to see a physician when it was necessary and did not prevent him from receiving pain medications, no reasonable jury could conclude Nurse Hutchison was deliberately indifferent to Orr's medical needs. *See Farmer*, 511 U.S at 834; *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (holding that deliberate indifference is a high standard and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks" or a "conscious, culpable refusal" to prevent harm). Accordingly, summary judgment is warranted in favor of Nurse Hutchison on this claim.

    c. *Nurse Lewis*

Orr is proceeding against Nurse Lewis on one claim "for violating the Eighth Amendment by failing to schedule timely sick call appointments and withholding [non-prescription] pain relievers on November 12, 2017; November 14, 2017; November 21,

2017; February 8, 2018; February 23, 2018; May 15, 2018; May 28, 2018; June 5, 2018; June 12, 2018; July 16, 2018; July 16, 2018; August 10, 2018; December 31, 2018; and January 15, 2019[.]" ECF 14 at 7-8. Nurse Lewis submits an affidavit, in which she attests to the following facts the Court accepts as undisputed:

> 1. At all relevant times, Nurse Lewis was employed by Wexford as the Health Services Administrator at WCF. [ECF 100-5 at 1].
>
> 2. Nurse Lewis's job duties were administrative in nature. She was tasked with overseeing the provision of medical services at the facility, ensuring facility compliance with IDOC Healthcare Directives, serving as a liaison between IDOC and medical staff, and providing feedback to the institutional grievance officer when requests were made after grievances were filed. [*Id.*].
>
> 3. Nurse Lewis received several grievances from Orr regarding his elbow pain. On each occasion, she reviewed Orr's medical records and ensured he had access to a physician and had received a treatment plan to be instituted and carried out by staff. [*Id.* at 2-6].
>
> 4. Based on her review of Orr's medical records, Nurse Lewis believed Orr had received appropriate treatment from Dr. Liaw and did not observe any significant omissions in his treatment. [*Id.* at 5].

Here, because Orr offers no evidence to dispute Nurse Lewis' affirmation she ensured Orr was receiving care each time he filed a grievance and she subjectively believed the treatment Orr was receiving was appropriate, no reasonable jury could conclude Nurse Lewis was deliberately indifferent to Orr's medical needs. *See Farmer*, 511 U.S at 834; *Duane*, 959 F.2d at 677. Accordingly, summary judgment is warranted in favor of Nurse Lewis on this claim.

    d.  *Physical Therapist Bates*

Orr is proceeding against Physical Therapist Bates on one claim "for violating the Eighth Amendment by fabricating health records to prevent him from accessing needed

10

medical treatment and by delaying his appointments to cause him physical harm and unnecessary pain[.]" ECF 14 at 7. Physical Therapist Bates submits an affidavit, in which he attests to the following facts the Court accepts as undisputed:

    1. Physical Therapist Bates began seeing Orr for physical therapy on January 23, 2018, after he received a referral from Dr. Liaw. Orr reported he had ongoing pain in his bilateral elbows with some radiating discomfort. After performing some tests, Physical Therapist Bates developed a specific home exercise plan for Orr and instructed him on a number of exercises. [ECF 100-4 at 1-2].

    2. Physical Therapist Bates met with Orr again on April 19, 2018, for a follow-up physical therapy visit. After examining Orr and going over all the assigned exercises, Physical Therapist Bates' plan was for Orr to continue with his exercises and to follow up at another appointment. [*Id.* at 2].

    3. Physical Therapist Bates saw Orr for a third physical therapy session on July 3, 2018. Physical Therapist Bates did a full assessment of both Orr's arms and concluded he had full range of motion. Physical Therapist Bates noted no signs of discoloration, visual deformities, swelling, or muscle atrophy, as he would expect with a patient that had a serious nerve injury. Physical Therapist Bates noted Orr was able to perform all of his daily functional tasks and activities of daily living independently. Physical Therapist Bates determined to discharge Orr from physical therapy, concluding he had reached the highest practical level of rehabilitation that could be expected. Physical Therapist Bates went over Orr's home exercise plan with him and encouraged Orr to continue those exercises independently. [*Id.* at 2-3].

    4. Physical Therapist Bates began Orr's physical therapy once he received the referral from Dr. Liaw and did not delay any visits with Orr. Because Orr's initial injury occurred in September 2017, it was appropriate to wait until January 2018 to begin physical therapy to allow necessary time for the bone to heal. [*Id.* at 4].

Here, because Orr offers no evidence disputing Physical Therapist Bates' affirmations he did not delay any visits with Orr and provided him therapy in a manner he considered to be medically appropriate, no reasonable jury could conclude Physical Therapist Bates was deliberately indifferent to Orr's medical needs. Moreover, Physical Therapist Bates' attestations indicate Orr's medical records accurately reflect Physical

11

Therapist Bates' observations and opinions, and Orr offers no evidence Physical Therapist Bates falsified any records. Accordingly, because there is no evidence by which a reasonable jury could conclude Physical Therapist Bates violated Orr's Eighth Amendment rights, summary judgment is warranted in favor of Physical Therapist Bates on this claim.

  *e. Wexford*

Orr is proceeding on a *Monell* claim against Wexford "for enforcing six policies (Health Care Records, HCSD-1.34; Access to Care, HCSD-2.04; Waiting List, HCSD-2.33; Medication Management, HCSD-2.17; Off-site Medical, Hospital, and Specialty Care Referrals, A1.05, and Health Evaluation of Offenders in Segregation, HCSD 2.25) which denied him needed medical treatment for his left elbow." ECF 14 at 8. To succeed on this claim, Orr must show that a Wexford policy was the "direct cause" or "moving force" behind a constitutional injury. *Pyles v. Fahim*, 771 F.3d 403, 409-10 (7th Cir. 2014). Here, because each Wexford employee provided Orr with constitutionally adequate care, as discussed above, no reasonable jury could conclude Wexford's policies caused Orr a constitutional injury. *See id.* Thus, summary judgment is warranted in favor of Wexford on this claim.

Accordingly, the Medical Defendants' summary judgment motion must be granted in its entirety.

**II.  State Defendants' Summary Judgment Motion (ECF 104)**

Orr is proceeding against State Defendants Warden Sevier and Captain Carter on one claim: "for forcing him to be handcuffed behind his back in violation of the Eighth

Amendment on numerous occasions from October 21, 2017, to January 1, 2019, despite his need for special accommodations because of an injury to his left elbow[.]" ECF 14 at 7. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In order to survive summary judgment, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Id*. at 322. The core requirement for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009).

There is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). As this circuit has explained:

> The doctrine of *respondeat superior* cannot be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights. Supervisory liability will be found, however, if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. That is, to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct. Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

*Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations and internal quotation marks omitted).

The State Defendants argue summary judgment is warranted in their favor because there is no evidence connecting them to Orr's assertion he was improperly handcuffed behind his back. ECF 105 at 7-9. However, Orr testified at his deposition that both Captain Carter and Warden Sevier forced him to be handcuffed behind his back despite knowing he needed special accommodations due to his elbow injury. ECF 100-6 at 38. Specifically, Orr testified he discussed the issue with Captain Carter when he saw him on rounds and Captain Carter told him "[n]obody in WCU gets frontwards cuffing." ECF 100-6 at 38; ECF 121-2 at 8. Further, Orr testified that Captain Carter was present during an altercation where Orr had refused to cuff up behind his back because of his elbow injuries, and Captain Carter ordered the officers to cuff him behind his back. ECF 100-6 at 38. Similarly, Orr testified he informed Warden Sevier about the issue when Warden Sevier was on rounds and submitted a grievance to Warden Sevier about the issue. ECF 121-2 at 8-9; ECF 100-6 at 38. Additionally, Orr testified both defendants continued to force him to be handcuffed behind his back even after Dr. Liaw entered an order he should only be handcuffed from the front. ECF 100-6 at 38. The State Defendants correctly note "[t]here is no general *respondeat superior* liability" under § 1983, but Orr has offered evidence both State Defendants approved of Orr being handcuffed behind his back despite knowing he needed special accommodations. *See Chavez*, 251 F.3d at 651 (holding a supervisor can be liable for conduct if the supervisor has knowledge of the conduct and approves of it). Thus, a reasonable jury could conclude the State Defendants were directly liable for violating Orr's constitutional rights.

The State Defendants also argue there is no evidence handcuffing Orr behind his back was "malicious" or "sadistic" rather than in good faith, as Orr has provided "no evidence of the State Defendants' culpable state of mind." ECF 105 at 7; ECF 122 at 7. However, a reasonable jury could conclude the State Defendants acted maliciously by forcing Orr to handcuff behind his back, as (1) there is evidence the State Defendants knew Orr required accommodation for his elbow injury, and (2) the State Defendants have provided no evidence handcuffing Orr behind his back was necessary to maintain or restore discipline. *See Hendrickson*, 589 F.3d at 890. The State Defendants next argue they did not act with "deliberate indifference" to Orr's elbow injuries because (1) they did not have subjective knowledge of Orr's injury, and (2) Orr received appropriate care for the injuries to his elbows. ECF 105 at 8-12. However, Orr is proceeding against the State Defendants on an excessive force claim, not a deliberate indifference claim, so the deliberate indifference standard is not applicable here. ECF 14 at 2, 7. Regardless, because there are disputed facts regarding whether the State Defendants acted maliciously, as discussed above, there are necessarily disputed facts regarding whether the State Defendants had subjective knowledge of Orr's injury. Lastly, the State Defendants argue they are entitled to qualified immunity because Orr "fails to state how State Defendants were directly or otherwise involved" in forcing him to be handcuffed behind his back. ECF 105 at 12-13. However, Orr did provide evidence the State Defendants were involved in forcing him to be handcuffed behind his back. The State Defendants' qualified immunity argument fails because it is premised upon their assertion they were not involved in handcuffing Orr behind his back, which is a

15

disputed fact. *See Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014) ("[t]he court cannot resolve disputed issues of fact when it addresses [whether the facts alleged describe a violation of a protected right] because the ordinary rules governing summary judgment apply in that situation").

Accordingly, a reasonable jury could conclude the State Defendants violated Orr's Eighth Amendment rights by forcing him to be handcuffed behind his back despite knowing of his need for special accommodation. Thus, the State Defendants' summary judgment motion must be denied.

For these reasons, the court:

(1) GRANTS the Medical Defendants' summary judgment motion (ECF 99);

(2) DISMISSES WITH PREJUDICE Orr's claims against the Medical Defendants;

(3) DENIES the State Defendants' summary judgment motion (ECF 104); and

(4) REMINDS the parties this case is now proceeding only on Orr's Eighth Amendment claim against State Defendants Warden Sevier and Captain Carter.

SO ORDERED on September 13, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT